# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF LINDA SHEAFFER, Petitioner-Appellee, and ROBERT SHEAFFER, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1049 |
| Filed | July 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly issued a permanent injunction against respondent's attempt to have the Department of Healthcare and Family Services make an adjustment to the child-support arrearage determined by the trial court, since the trial court had exclusive jurisdiction over that matter. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-D-253; the Hon. Paul A. Marchese, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Rebecca M. Lee and Alexis M. Costello, both of Gummerson Rausch Wand Lee Wombacher, LLC, of Woodstock, for appellant. |
| | Mary E. McSwain, of McSwain & Associates, P.C., of Wheaton, for appellee. |

| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Hutchinson and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, Robert Sheaffer, appeals from an order permanently enjoining him from requesting any adjustment from the Department of Healthcare and Family Services (HFS) to his child-support arrearage as determined by an order entered by the trial court on November 30, 2010. We affirm.

¶ 2                          I. BACKGROUND

¶ 3    In February 2008, petitioner, Linda Sheaffer, began dissolution-of-marriage proceedings. The record is lengthy, shows that the proceedings were contentious, and includes multiple orders concerning child support. In October 2009, HFS sought to intervene to have the trial court establish child support and allow for HFS enforcement. On September 17, 2010, the trial court dissolved the marriage, and on November 30, 2010, the trial court determined that respondent was $21,189.12 in arrears on his child support as of September 17, 2010. There was no motion to reconsider and no appeal of that order.

¶ 4    In September 2011, HFS notified respondent of its intent to collect the past-due child support. Respondent contested the calculation of the amount past due and, on November 29, 2011, HFS sent respondent a notice stating that it had credited his child-support arrearage by the amount of $4,082.40. The notice stated that petitioner had been mailed an "Affidavit of Direct Child Support Payments" that asked if she agreed with the amount. The notice also provided information about respondent's ability to appeal by requesting a hearing.

¶ 5    On May 18, 2012, HFS sent a letter to petitioner notifying her that respondent had scheduled a hearing for June 26, 2012. On May 31, 2012, petitioner's attorney sent a letter to HFS, describing the November 30, 2010, order and informing HFS of his belief that the trial court had exclusive jurisdiction over the matter.

¶ 6    On June 5, 2012, petitioner filed a motion seeking injunctive relief. She alleged that respondent was attempting to modify the trial court's November 30, 2010, order despite the trial court's exclusive jurisdiction over the matter. Respondent filed an answer in which he

-2-

alleged that the trial court's November 30, 2010, order had clear errors. Respondent then pointed to various calculations and materials that he believed were in error, stating that these showed a necessity for HFS to calculate the amount that it could recover. At a hearing on the motion, respondent also presented evidence about his belief that the calculations were in error.

¶ 7     On June 11, 2012, the trial court enjoined respondent from seeking to modify the November 30, 2010, order before any administrative agency and from seeking a redetermination of any arrearage prior to September 17, 2010, or any child support ordered before June 11, 2012. The court also denied respondent's request for a bond. Respondent moved to vacate. The court reconsidered the matter but reached the same conclusion that an injunction was warranted and ordered that the injunction be permanent. Respondent appeals.

¶ 8                                    II. ANALYSIS

¶ 9     Respondent contends that the trial court improperly granted the injunction, arguing that petitioner did not prove the four prerequisites for a preliminary injunction.

¶ 10     " 'To justify entry of a preliminary injunction, the moving party carries the burden of persuasion on four issues: (1) he or she possesses a clearly ascertainable right which needs protection; (2) he or she will suffer irreparable injury without the injunction; (3) there is no adequate remedy at law for his or her injury; and (4) a likelihood of success on the merits exists.' " *In re Marriage of Davenport*, 388 Ill. App. 3d 988, 991 (2009) (quoting *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 336 (2001)). "The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and the decision will not be disturbed on review absent an abuse of discretion." *Id.* "[W]e can only find an abuse of discretion where no reasonable person could agree with the trial court's decision." *Shaw v. St. John's Hospital*, 2012 IL App (5th) 110088, ¶ 18.

¶ 11     "It is well settled in Illinois that courts have the power to issue injunctions restraining the parties before them from filing or proceeding with related actions in other courts, in order to prevent the maintenance of vexatious and harassing litigation." *In re Marriage of Gary*, 384 Ill. App. 3d 979, 983 (2008). "The prosecution of a later-filed suit also may be enjoined if it appears likely to cause undue interference with the progress of the original action." *Id.* Indeed, a litigant seeking to enjoin later-filed actions in other Illinois courts need not demonstrate the existence of the factors for typical injunctions and may obtain an injunction where: (1) either the parties and the legal issues involved are the same or the issues involved in the later-filed action are of the type that can and ordinarily should be disposed of in the course of the original action; and (2) there does not appear to be any proper purpose for the maintenance of the later-filed action. *Id.* at 986-87.

¶ 12     The modification of a child-support obligation is an exclusively judicial function. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). In order to modify a child-support obligation, a parent must petition the court and obtain judicial approval of any changes. *Id.* at 168. In general, a court does not have the power to retroactively modify a parent's child-support obligation. See *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 691 (1994).

¶ 13     Here, although an administrative agency instead of another court is involved, the

principles from *Gary* are analogous. However, we need not decide whether those principles extend to later-filed administrative actions, as the requirements for a typical injunction were met.

¶ 14   Petitioner stated a clearly ascertainable right to protect the finality of the trial court's previous decision and to avoid relitigating matters that were in the exclusive jurisdiction of the trial court. Respondent contends that petitioner merely stated a belief that he was attempting to contest the original calculation of the arrearage, but his own pleadings and evidence showed that he was seeking to correct what he viewed as errors in the calculation. Petitioner also stated the potential for irreparable injury since any relitigation of the matter would present unnecessary costs and present the risk of conflicting orders, leading to further litigation. There was no adequate remedy at law, because, outside of obtaining an injunction, petitioner had no way of ensuring that the administrative agency would not usurp the previous arrearage calculation. Respondent contends that petitioner could have challenged the agency's authority through the administrative process, but that argument misses the point that doing so, even successfully, would have required unnecessary costs.

¶ 15   Respondent cites to a case holding that, where the only purpose of the injunction is to provide monetary relief, there is an adequate remedy at law, and an injunction should not be entered. *Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d 827, 840 (1988). But here, the purpose of the injunction was not to provide monetary relief. Instead, it was to protect the integrity of the judicial determination of the amount already due and to avoid unnecessary litigation.

¶ 16   As to the likelihood of success on the merits, respondent contends that the trial court wrongly failed to consider the issue. However, the court ultimately entered a permanent injunction. There is a distinction in both purpose and proof as between preliminary and permanent injunctions. *Butler v. USA Volleyball*, 285 Ill. App. 3d 578, 582 (1996). "Preliminary injunctions are designed simply to preserve the status quo pending resolution of the merits of the case." *Id.* "In contrast, permanent injunctions are designed to extend or maintain the status quo indefinitely when the plaintiff has shown irreparable harm and that there is no adequate remedy at law." *Id.* "When granting permanent injunctive relief, the trial court, by definition, necessarily decides the plaintiff's success on the merits of the case." *Id.*

¶ 17   Here, the trial court stated its intent to order a permanent injunction. In any event, the likelihood of success on the merits was clear, as only the trial court had jurisdiction over the determination and modification of child support, and respondent made clear in his own pleadings and evidence that he was attempting to usurp that power by challenging the amount that the administrative agency could collect.

¶ 18   Finally, respondent contends that the trial court erred in denying his request for a bond. The issuance of an injunction bond is within the discretion of the trial court. *Falcon, Ltd. v. Corr's Natural Beverages, Inc.*, 165 Ill. App. 3d 815, 822 (1987). Here, although respondent asked for a bond in his answer, he did not present any evidence at the hearing that one was necessary. See *id.* He further provides no reason for the need for a bond in his brief. Accordingly, he has not provided any basis to find that the trial court abused its discretion in denying the request for a bond.

-4-

¶ 19                            III. CONCLUSION

¶ 20        The trial court did not abuse its discretion in entering the injunction and denying a bond.
       Accordingly, the judgment of the circuit court of Du Page County is affirmed.

¶ 21        Affirmed.